Case number 20-1479 S2 Yachts Inc v. ERH Marine Corp. Oral argument not to exceed 15 minutes per side. Ms. Ginter for the appellant. Morning. Morning. Thank you. May it please the court, my name is Christina Ginter. I represent the appellant ERH Marine Corp. With court's permission, I'd like to reserve three minutes for rebuttal. That's fine. Thank you. So, we presented three issues to the court. And I'm happy to answer any questions about any of those issues. But I'd like to focus on one of the issues, which is the grant of summary judgment on the merits as to the applicability of DR Law 173. So the parties, I think, agree that this issue primarily turns on the question of whether Michigan law or Dominican Republic law will apply. And if Dominican Republic law applies, will DR Law 173 apply? The district court held that, essentially, it didn't make much difference whether Michigan law or Dominican Republic law applied. Because in the court's view, DR Law 173 would not apply because of the effect of a subsequent trade agreement, DR CAFTA. DR CAFTA contains a provision that addresses whether or not DR Law will apply. And that provision states that DR Law 173 will not apply, shall not apply to a covered contract signed after the date of entry into force of the agreement. Then it will continue to apply to a covered contract signed after the date of entry into force of the agreement. And the term covered contract is very important here. The DR CAFTA does not say contract. It says covered contract. It's a defined term within DR CAFTA. And the defined term covered contract refers back to the definition in DR Law 173. That definition is a very, very broad definition. It says that it actually doesn't talk about covered contract or concession contract, which are the terms used in DR CAFTA. It refers to license agreement. And it defines that as any form of established relations between licensee and licensor. So it's understood to be much broader than a single contract or even a written contract, not even to require a written contract, but to talk about the nature of the relationship and when it was established. And I think that's a very important point here because in this case, we have an established relationship. No dispute. There was an established relationship that existed prior to DR CAFTA. We have written contracts also signed prior to DR CAFTA reflecting that established relationship. You know, you've also got these contracts from 2014 and 2016, which I know you're about to get to. And it seems to me, under your argument, that a covered contract could extend in perpetuity, in effect, if the relationship existed before 2007. And then you had contracts that went into effect many years later. Those would be covered contracts, even though they're post-March 1, 2007 contracts. Add to that the 2014 and 2016 contracts essentially say, I think they say something to the effect that they supersede these prior contracts. So I guess you're about to address that, but that's my concern. That's correct. Well, that's true. Now, the point is, though, that I think that's exactly what DR Law 173 contemplates, is that you would continue to have this relationship. It might be established through contract renewals or new contracts. But it's the establishment of the relations between the parties and when that occurred that matters, not any particular contract and when that particular contract was entered into. And I think DR Law- Do we have anything in the nature of, I hate to call it a legislative history, but is there anything at all that would support that interpretation? Well, as far as- Other than what, I guess, what you have in the briefing already. Right. I don't have anything for the court today. And of course, Dominican Republic, the law is in Spanish. So that's part of the problem here that we have with interpreting another country's law that's in a foreign language that we have to try and figure out. But I think the fact that it defined license agreements so broadly is the answer. We have to look to the plain language of that act. And it says, any form of established relations, had they intended to limit it to a contract or talk about when contracts were entered into or when they were renewed, it could have done so and it didn't. And it also makes it very clear that at no time, once there's an established relation, can a supplier terminate or non-renew the relationship? It is intended to be in perpetuity because what's intended to be protected here is the interest of the dealer having invested and made efforts to build this business and to connect with these customers. And that's what the Dominican Republic was trying to protect. So it wouldn't make sense to say, well, five years in, you could sign a new contract and then you could just terminate that and that would be fine. So I think what is intended is in perpetuity. And I think the fact that DR CAFTA wanted to be prospective only and not retroactive, and it hinged that determination of what was prospective and retroactive on the definition back in DR Law 173. It didn't use its own definition. It used DR 173. And that definition is so broad and it focuses on the establishment of the relationship, which again, was supposed to protect the Dominican Republic dealer from having this cut off after having spent money and time and effort in building this business. So I think that's what's really important here. Now, I acknowledge that DR CAFTA does say signed and that's very confusing because they do signed and then they go back and define it covered contract in a way that doesn't really mean written contract or signed contract. And that's problematic. But I think in light of the fact that they used that DR Law 173 definition, I think in light of the fact that it's clearly intended not to go back and disrupt the relationship that existed prior to DR CAFTA, which in this case had existed for years, I think it should be understood to mean be consistent with the definition of covered contract, which is established relations and not simply a single contract or even a written contract. And I point out again, we do have signed contracts from prior to DR CAFTA between these parties. So I think that's important. And it's also important to remember that S2 Yachts came to the Dominican Republic and subjected itself to this law at a time when DR CAFTA was not in place and perhaps not even contemplated. So S2 Yachts expectation. Taking CAFTA into account, don't we have to decide whether the later agreements are extensions or renewal agreements? There is some language in later agreements saying that the renewal agreements supersede all prior agreements, which would seem to cut against your argument. I agree that language is in those subsequent agreements. The question is whether the parties can contract out of the application of DR Law 73 by including that language in their contracts. Again, had DR CAFTA intended to say that if you enter into a renewal or a new contract, had it intended to make that clear, it could have done so. It could have simply used the term contract, but it did not. It used the term covered contract, made it a defined term, referred back to the definition. However, if we were going to go that route, the Dominican Republic law is there for a purpose. So couldn't we take into account or consider whether the Dominican Republic had a public policy interest in there not being an ability to permit the parties to supersede the prior agreements and in the absence of any public policy interest, we would not enforce or apply that provision of the Dominican Republic law? Sorry, my light's just went on. So yes, the Dominican Republic in DR Law 173 made it very clear that the parties could not contract out of DR Law 173. And so it's public policy in enacting that law was to protect the dealers. And even if the contract said, we're gonna not apply Law 173, you would still apply Law 173. So that's the public policy. Now they did enter into DR CAFTA in 2007, but again, they made it clear, I think, that they wanted that to apply prospectively only and not affect prior established relations. Again, by using that definition that refers back to DR Law 173, rather than a different definition that would have indicated that you could enter new contracts, even though you have established relations and thereby cut off DR Law 173. So I think saying that language superseded, cuts it off is really contrary, both to the policy in DR Law 173 and to the retroactivity prospectivity policy reflected in DR CAFTA, where I think it's clear that they still wanted to protect those prior relationships. I think I've covered that issue. Unless the court has any questions about that issue or any other issues. I can reserve your time for rebuttal. Yes, thank you very much. Great. Okay, Mr. Smith, on behalf of S2 Yachts. Morning, your honors, Jeffrey Smith for S2 Yachts. I'll be brief. The language of DR CAFTA answers each and every one of these issues that's been raised. There's no language in DR CAFTA that supports the arguments that ERH made. The district court went through the legislative history at some length. Clearly DR CAFTA reflects the current updated policy of both countries involved in this trade agreement. And to read all of the things that ERH argues are part of DR CAFTA really flips it on its head. It eviscerates the plain language of DR CAFTA. I think we all agree that DR CAFTA is the controlling law here, as it post dates law 173 and it reflects an update to the policy of both countries as to trade relationships between manufacturers and distributors. The plain language of DR CAFTA, when you look at annex 1113 section B talks about the date the covered contract was signed as the bright line that divides what's in section one or section two. And section one, of course, is the section that S2 Yaz believes is applicable to this case. I think it's noteworthy that plaintiff's own expert, Dr. Cervero Issa, who is a member of the Dominican Supreme or Dominican Republic Supreme Court, when you look at his expert report at paragraph 41, even plaintiff's own legal expert says that the controlling date is when the affected contract was signed. Here, there's no doubt, but that the contracts in play, irrespective of all of the underlying details that are noted in the briefs about whether the registration was proper and so forth. Bottom line is that both of the affected contracts were signed well after DR CAFTA went into place. From a practical standpoint, if there was a dispute about performance under those contracts, clearly the parties would look to those most recent agreements to say, did you sell the required number of products? Did you have the right dollar volume? Clearly none of the parties would look to the prior superseded contracts going back to the early 2000s and say those early contracts established the benchmarks of our performance. And notably, both parties agreed that the post-CAFTA contracts superseded all prior agreements between them. Bright line, bright line in its application, clear and simple. When you get to the other issues that they've raised, section one talks about the freedom of contract principle that is now inherent in the trade relationships. It talks about the ability of the parties to select a forum. I would note that both the US District Court as well as the Dominican Republic Court of the first instance, that's their version of our trial courts, they both held that the case was properly pending in Michigan under the contracts between the parties. Again, that's an argument that even the DR courts don't agree with. I would note that the DR CAFTA also says that the good cause includes the natural expiration of contracts, which is in play as to the TR contract, as to the pursuit coach contract that allows termination of a contract without an expiration or stated expiration period on six months notice that was given in this particular case. So the short answer is, if you read the plain language of DR CAFTA, it answers all of these questions. And the district court correctly applied the law in rendering its decision. I would also note that there are some other arguments that council hasn't addressed regarding the court's decision to certify this issue under 54 B for early appeal, while there are other issues remaining before the district court. I would simply note that the law 173 versus DR CAFTA issue, it is unique. All of the facts relevant to that analysis have been decided and determined by the court. There's nothing left for the other trial that could potentially impact on this particular issue. It's separate and distinct. The court went through the relevant factors in exercising its discretion to certify this issue. I don't think there's any debate about that. And we believe that this issue is properly before the court. So I would simply urge your honors to look at DR CAFTA on its face. It says what it says. If they wanted to grandfather prior contracts in, they could have said so, but there's nothing in the language, nothing in the legislative history suggesting any intent to do so. So we simply look at what the parties agreed were the current contracts that were in effect that superseded everything else. Apply the bright line test under DR CAFTA as to when the contracts were signed. And I believe the debate is over. I'd be happy to answer any questions the court may have. Mr. Smith, could you briefly address the forum order entered by Judge Yonkers, which addressed the motion dismissed based upon forum inconvenience, abstention and the Brillhart Doctrine? Right. So there was extensive briefing on that particular issue, both under Brillhart and other abstention doctrines that might be applicable. As your honor knows, there are a number of factors for the court to consider in deciding whether or not one forum in the U.S. should be selected versus another forum here in the Dominican Republic. A couple of things that I would note in that regard. First of all, clearly Judge Yonker went through each of the factors in exercising his discretion there. And it's an abusive discretion standard as I understand it. Secondly, he noted that the parties specifically selected Michigan and whether it's federal or state court as the proper forum. That wasn't something new that had started at the very beginning of their relationship. So that was not a new fine print bit that got slid in at the end of it. That was something that was an inherent part of the party's relationship from the very beginning. I would also note that the U.S. federal court proceeding was filed first. The conciliation proceeding is a pre-litigation settlement conference. That's what happened, by the way, after the U.S. federal court proceeding was filed. That did not result in a settlement of the case. The DR proceeding, legal proceeding was filed about six months later. And again, your honor, as I previously noted, both the DR court and the U.S. court held that when you looked at those factors, jurisdiction properly was assumed by the district court in the grand jury. Speaking of jurisdiction, we get this case because Judge Yonkers certified the ruling or the partial judgment pursuant to Rule 54B. How do we have jurisdiction over the forum order based upon the certification under 54B? I think that goes really, I'm not sure that you do, your honor. I'm not sure that that's- If we don't, we shouldn't rule on it, should we? Well, I think you should, because I think it starts with the issue of whether or not the district court properly exercised jurisdiction in the first place. I mean, I think it comes down to an issue of, it's not subject matter jurisdiction, but it really comes down to the fundamental question of whether or not the district court had any business opening its file and proceeding in the case or whether it should have abstained. That's an issue, again, which is an abuse of discretion question. And the court went through its analysis under Brillhart and other abstention cases, looked at each of the factors and determined that it was appropriate for the federal district court to take the matter on and proceed with it. Okay. Thank you. Okay. Thank you, Mr. Smith. Ms. Ginter, you have your rebuttal time. Thank you. As far as, I just wanted to mention the Dominican Republic case, the trial court did hold that the Dominican Republic did not have jurisdiction and Michigan had jurisdiction. That case is on appeal pending right now, no decision yet. And if there is a decision in the intermediate court, it could very well go up to the Supreme Court in the Dominican Republic. So as far as the forum non-convenience and abstention issues go, I do think the district court's analysis turned quite heavily on its conclusion that DR Law 173 would not apply and therefore the Dominican Republic did not have a material interest in applying its law or the law did not significantly differ from Michigan law. And as I discussed in the first argument, I think that was an incorrect conclusion. And I think if that conclusion had been different, it would have certainly affected the court's weighing of those factors. And so if that conclusion is wrong, then those factors might not have been assessed correctly. As far as Judge Griffin's question about the jurisdiction with certification of the prior forum order, I don't believe that question has actually been addressed in this circuit, but I did cite a case from the Seventh Circuit, the O'Brien case, O'Brien versus O'Brien and Associates, that basically said when a court certifies an order as a final order, the court should have jurisdiction to review all of the orders that led up to the entry of that final order. I don't say that the court should have jurisdiction to assess all of the orders entered in the case, but if the court does not have jurisdiction to assess the entry of an order that relates to entry of the final order, then it would never have jurisdiction and it would never be able to be assessed because this is now a final order and it has to be decided now. So the issue of forum nonconvenience, it shouldn't be lost via certification of a final order and never be able to be reviewed. I just wanna go back quickly to that issue about the word signed that counsel for S2 says it's so clear. Well, it's not clear because again, the court or the parties in DR CAFTA chose to use the term covered contract rather than contract and covered contract. We know DR Law 173 applies to any form of established relations. It's such a broad definition. It's clearly not related to a single contract. It doesn't even necessarily require a written contract. And because DR Law 173 applied so broadly, it doesn't make sense to understand DR CAFTA's retroactivity and prospectivity cut off in that way. That it's based on signing of a single contract because it's not consistent with its use of the term covered contract. And that's all that I have to say on those topics. If the court has any questions, I'm happy to answer them. I think we have enough. Yeah, I think we've exhausted our questions. Thank you, counsel, Ms. Gunter and Mr. Smith for your arguments this morning. We really do appreciate them. The case will be taken under advisement and the clerk may call the next case. Thank you. Thank you. Thank you.